HOLMES *v.* SOULE.

1. DEEDS—QUITCLAIM DEED—GOOD FAITH.
   The owner of realty by virtue of a quitclaim deed stands in no better position than his grantor.

2. LIMITATION OF ACTIONS—TAXATION—TAX TITLE—STATUTES.
   Act No. 58, Pub. Acts 1907 (1 How. Stat. [2d Ed.] § 1843), imposing a five-year limitation upon the right to attack a tax title, does not affect tax interests purchased prior to

its enactment, since the legislative intent to give the act retroactive effect is not made clear.

3. SAME—TAXATION.

As a rule general statutes of limitation must operate uniformly.

4. TAXATION—POSSESSION—QUIETING TITLE.

By entering into possession of lands under a claim of ownership through certain tax deeds, the grantees did not obtain any rights, if a valid notice to redeem was not served on the proper parties. Service of notice is a condition precedent to the vesting of title in the purchaser.

5. SAME—LIMITATIONS, FIVE YEAR.

Section 73 of Act No. 206, Pub. Acts 1893, providing that no tax sale or deed of the State shall be set aside after the purchaser has been in actual possession for five years has been held to be repealed by implication. *Cook Land, etc., Co.* v. *McDonald*, 155 Mich. 175 (118 N. W. 959).

6. SAME—EQUITY.

Where the holder of a tax title served a notice upon the owner of record, stating the total amount required for the redemption of two parcels, which was therefore defective and insufficient, and where neither party was shown to have been in possession of the land, no equitable relief could be granted to the grantee of the holder of title who did not ask for the right to redeem or offer to pay the amount required.

7. SAME—LACHES—EFFECT.

Mere delay on the part of the owner to assert his rights against the claimant under a tax title who did nothing in reliance upon the silence of such record owner, is insufficient to confer any right although an insufficient notice to redeem was served.

Appeal from Ottawa; Cross, J. Submitted January 23, 1914. (Docket No. 50.) Decided June 1, 1914.

Bill by Clyde J. Holmes against Charles E. Soule and others. From a decree dismissing bill and defendants' cross-bill, both parties appeal. Affirmed.

*Walter I. Lillie*, for complainant.

*Soule & Soule*, for defendants.

OSTRANDER, J.   Complainant claims title to lots 3 and 4, section 18, town 8 N., of range 16 W.   His evidence of title is a quitclaim deed from the owner of the original title, dated March 5, 1913, and recorded. He filed the bill of complaint in this cause March 24, 1913, setting up his title and the defendants' title, and praying that defendants may be decreed to convey to him all right, title, and interest in the land claimed by them, or either of them.   Defendants answered the bill, and in their answer claim the benefit of a cross-bill, and as affirmative relief ask that a decree be entered that the complainant's deed is void, and requiring complainant to convey to defendants all his right, title, and interest in the lands.   The cross-bill was answered, and, the cause being at issue, it came on for hearing in open court in September, 1913, and certain testimony was offered and received.   The court below found and decreed:

"I. That the bill of complaint was filed in this cause to quiet the title to the following described real estate, viz.:   Lots 3 and 4 of section 18, town 8 north, range 16 west, Ottawa county, Michigan.

"II. That the complainant claims title through a quitclaim deed obtained from the person to whom the fee vested through a regular chain of title from the original purchaser.

"III. That the cloud upon the title which the complainant seeks to have removed are a tax deed given by the auditor general to Edward S. Craw, a deed given by Edward S. Craw to Charles E. Soule, a deed for one-half interest given by Charles E. Soule and wife to Wm. N. Angel, and a deed given by Wm. N. Angel to Daniel W. Andrews, Anna Angel Andrews, George E. Angel, Clara M. Angel, Henry A. Angel, and Edith Angel.

"IV. That at the tax sale the lots were sold separately, being so assessed.   The aggregate purchase price paid was $228.89, being the taxes upon both lots from the year 1888 to 1901.   Both lots were included in one deed, and the notice given to perfect the tax title gave the total amount paid for both lots, but did

not specify the amount paid for each. That such notice did not comply with the law.

"V. That said notice as above described was served upon complainant's grantor on the 8th day of December, 1902, and was actual notice of the sale of the lots for delinquent taxes, although the notice was not in legal form to cut off redemption, or upon which a writ of assistance could be based.

"VI. The complainant, holding by quitclaim deed, has imputed to him the delinquencies of his grantor. The lots had been returned delinquent for taxes since 1888, and since 1902 the defendant had paid the taxes. That no attempt or offer was ever made since 1888 by the complainant or his grantor to pay these taxes.

"VII. The claim of laches urged by the defendant under and by virtue of the decision of the case of *Clothier* v. *Miller* [173 Mich. 530 (139 N. W. 253)], is conclusive in this case.

"VIII. It is therefore adjudged and decreed that the bill of complainant be and the same is hereby dismissed, without prejudice, with costs to the defendant, to be taxed, and that they have execution therefor."

All parties have appealed. It should be stated as a fact relied upon by complainant that no attack is made by the bill upon the tax proceedings or the sale of the land for taxes. The contrary is expressly charged in the bill.

The real contentions of parties may be briefly stated. Complainant claims that, because no valid notice to redeem was given to his grantor within five years after the purchase of the tax title, defendants are barred from asserting the title, and from claiming a lien upon the land by virtue thereof. Act No. 58, Pub. Acts 1907 (1 How. Stat. [2d Ed.] § 1843). Defendants say this act cannot have a retroactive effect. They also claim that their grantor gave a notice, imperfect it is true, which the original owner admitted receiving, and before receiving, expressly, and thereafter, by conduct, refused to redeem the

land; that after six months after giving said notice defendants' grantor entered into possession of the premises, claiming them by virtue of his tax title, and peaceably occupied them until this suit was begun, paying the taxes. The laches of complainant's grantor, and his practical abandonment of the premises in 1902, is asserted as a bar to any equitable relief favoring complainant, and all the circumstances are relied upon as entitling defendants to a decree quieting their title.

Before investigating the claim of either party to equitable relief, it is well enough to see where the law leaves them. Complainant is in no better position than his grantor was, but, for convenience of statement, may be said to have the original, or government, title to the land. Assuming, as we must, that the tax titles are valid, the original or government title is extinguished (*Griffin* v. *Kennedy,* 148 Mich. 583 [112 N. W. 756]; *Embury* v. *Goodenough,* 157 Mich. 140 [121 N. W. 744]; *Haney* v. *Miller,* 154 Mich. 337 [117 N. W. 71, 745]; *Horton* v. *Helmholtz,* 149 Mich. 227 [112 N. W. 930]), saving only the right, given by the statute, to redeem the land by paying the taxes and a penalty. No other or additional right accrued to him by virtue of Act No. 58, Pub. Acts 1907, because the act has no application. In the first place, the intention of the legislature that the act passed in 1907 shall have retroactive effect is not clear, and, in the second place, the tax deeds established between the purchaser and the State contract relations which it will not be presumed the State intended to violate or to change. A third reason may be stated, which is that a general statute of limitations must operate uniformly, and the statute invoked would not do so if it were applied to titles acquired before the law was passed.

Defendants own the tax title and the land, subject to the right of complainant to redeem—a right which

in law has not been extinguished because no proper notice to redeem has ever been given. Defendants are not aided, in law, by having occupied the land, if in fact they have occupied it (a fact not found by the trial court, and of which the testimony is not convincing), because they had no right to its possession. *Corrigan* v. *Hinkley,* 125 Mich. 125 (83 N. W. 1020); *Huron Land Co.* v. *Robarge,* 128 Mich. 686 (87 N. W. 1032); *Holmes* v. *Loud,* 149 Mich. 410 (112 N. W. 1109); *Cook Land, etc., Co.* v. *McDonald,* 155 Mich. 175 (118 N. W. 959); *Morrison* v. *Semer,* 164 Mich. 208 (129 N. W. 1); *White* v. *Dunsmore,* 167 Mich. 542 (133 N. W. 523); *Powell* v. *Pierce,* 168 Mich. 427 (134 N. W. 447); *McRae* v. *Barber,* 171 Mich. 111 (136 N. W. 1118). In *Huron Land Co.* v. *Robarge,* it was said that service of a notice is a condition precedent to vesting title in the tax title purchaser. In *Morrison* v. *Semer, White* v. *Dunsmore,* and *Powell* v. *Pierce,* imperfect notices had been given. In *White* v. *Dunsmore,* the lands in question were wild and uncultivated, and it was held that the owner of the record title could not maintain trespass for the wrongful entry of the holder of the tax title before tendering the amount required to be paid for a reconveyance. In *Adkin* v. *Pillen,* 136 Mich. 682 (100 N. W. 176), the land was occupied by the owner of the original record title, and we said:

"Notwithstanding the fact that the State had acquired the absolute ownership of this land, and notwithstanding the language above quoted, the title acquired by defendant was, by Act No. 229 of the Public Acts of 1897, subject to redemption for a period of six months, and during this time defendant was not entitled to possession of the land. We have recently held (see *Auditor General* v. *Sherman,* 136 Mich. 157 [98 N. W. 995]) that, notwithstanding the language of section 72, above quoted, the title thereby conveyed is subject to sale for prior taxes under certain conditions, by virtue of Act No. 169 of the Public Acts

of 1899. It is equally clear that we are bound to hold that, by Act No. 229 of the Public Acts of 1897, said title acquired under section 72 did not become absolute—and this is true whether that title had or had not become absolute in the State before sale—until the period for redemption had expired. Until the expiration of this period, during which the original owner has the sole right of possession and the right to redeem from outstanding tax titles, such owner, and not the owner of said tax titles, which may or may not become absolute, is the owner of the property."

Section 73 of the tax law (Act No. 206, Pub. Acts 1893 [1 How. Stat. (2d Ed.) § 1842]), relied on by defendants, was, as applied to a case like this, held repealed by implication in *Cook Land, etc., Co.* v. *McDonald, supra.* Proceeding no further, it would appear that, when this suit was begun, the parties in interest were in no better nor worse position, relatively, than when the defendant's grantor acquired the tax titles.

Complainant, in a court of equity, admits that the tax title purchaser served a notice upon his grantor December 8, 1902, and charges, what is admitted to be true, that the notice was defective because, in advising his grantor of the sale of both parcels and of the amount required to redeem both, it did not specify nor disclose what amount could be paid to secure a reconveyance of either parcel. *Jackson* v. *Mason,* 143 Mich. 355 (106 N. W. 1112). He asks the court to apply in his behalf the statute which has been referred to. No other ground of relief being asserted, and complainant not having offered to now redeem the land, nor asked for permission to do so, no equitable relief can be granted to him.

Neither party having been in possession of the land, there is no controlling statute of limitations. Defendants and their grantor have done nothing in reliance upon the silence of complainant's grantor.

They have paid the taxes, which they were obliged to do to protect their interest. Laches implies negligence—a neglect or failure to do what ought to be done under the circumstances to protect the rights of the parties to whom it is imputed, or involving injury to the opposite party through neglect to assert rights within a reasonable time. Usually one having an interest in land which is not in the actual possession of another is under no obligation to assert his interest until it is attacked, and there seems to be no good reason for saying that one having such a right as the complainant claims may not remain silent until his right is questioned. In any event there is no apparent reason for holding that the right is cut off and lost in favor of another who has taken ineffectual proceedings to divest it. The case presented is not like *Bending* v. *Auditor General,* 137 Mich. 500 (100 N. W. 777), *Beuthien* v. *Dillon,* 160 Mich. 396 (125 N. W. 363), *McFarlane* v. *Simpson,* 153 Mich. 193 (116 N. W. 982), *Owens* v. *Auditor General,* 147 Mich. 683 (111 N. W. 354), *Clothier* v. *Miller,* 173 Mich. 530 (139 N. W. 253), and similar cases, in which, because of laches, relief is denied to a complainant. Nor is it like *Aztec Copper Co.* v. *Auditor General,* 128 Mich. 615 (87 N. W. 985), *Croskery* v. *Busch,* 116 Mich. 288 (74 N. W. 464), *Horton* v. *Salling,* 155 Mich. 502 (119 N. W. 912), *Morrison* v. *Semer,* 164 Mich. 208 (129 N. W. 1), and *Backus* v. *Hoyt,* 164 Mich. 407 (129 N. W. 693), where equitable relief was granted upon condition that the complainant do equity.

I am of opinion that the parties must be remitted to enforcement of their legal rights—a conclusion which requires the affirmance of the decree, without costs of this court to either party.

McALVAY, C. J., and BROOKE, KUHN, STONE, BIRD, and STEERE, JJ., concurred. MOORE, J., did not sit.